

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) | Criminal Action No. 5: 18-170-DCR |
| V. | ) ) ) | |
| D'VONTA L. MIDDLEBROOKS, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On December 6, 2018, an indictment was returned by a federal grand jury, charging Defendant D'Vonta Middlebrooks with being a felon in possession of a firearm, possessing a stolen firearm, and possessing cocaine. The charges are the result of Middlebrooks' interactions with law enforcement officers on August 22, 2018. He pleaded guilty on April 5, 2019, to being a felon in possession of a firearm. In exchange, the United States agreed to move to dismiss the remaining counts at the time of the sentencing hearing. The probation officer assigned to the case prepared a pre-sentence investigation report ("PSR") which assigned four points to Middlebrooks' base offense level pursuant to United States Sentencing Guidelines section 2K2.1(b)(6)(B). The increase applies if a defendant possesses a firearm or ammunition in connection with another felony offense.

Middlebrooks objects to the four-level enhancement. [Record No. 19] However, because the government has established, by a preponderance of the evidence, that Middlebrooks possessed a firearm in connection to another felony offense (drug trafficking), Middlebrooks' objection will be overruled.

**I.**

**A.     Uncontested Information from Middlebrooks' PSR**

Part B of Middlebrooks' PSR outlines his criminal history. Although he is only 24 years' of age, he has a total of 16 criminal history points, placing him in Criminal History Category VI. On October 16, 2016, Middlebrooks was involved in a shooting which resulted in the death of Trinity Gay, a young high school student. Middlebrooks was later charged with wanton endangerment in the first degree and being a persistent felony offender. He was sentenced on January 17, 2019, to a term of imprisonment of 15 years by a judge of the Fayette Circuit Court. At the time of the incident giving rise to the present federal charges, Middlebrooks was out on bond pending resolution of the state charges regarding the shooting death. Additional details are outlined in paragraph 34 of the PSR.

In addition to receiving three criminal history points for the above-described state conviction, Middlebrooks has other state convictions for possession of a controlled substance in the first degree for which he was given a one-year prison sentence (suspended) imposed by the Fayette Circuit Court on July 20, 2016. The PSR indicates the conduct giving rise to this conviction occurred in February 2016. Paragraph 33 of the PSR outlines that Middlebrooks was approached by officers attempting to execute a warrant. Middlebrooks fled on foot but was eventually apprehended. He was found to be in possession of 1.2 grams of cocaine. Officers located an additional 2 grams of cocaine in the area of the officer's pursuit. He received two criminal history points for this incident.

Middlebrooks was also convicted of fleeing and evading police in the second degree on November 19, 2015 and eventually received a 12-month jail sentence by the Fayette Circuit Court. Again, however, service of the sentence was suspended. The description of the

conviction and facts leading to the charge are outlined in paragraph 32 of the PSR. According to state court records, officers attempted to stop Middlebrooks as he was driving a vehicle which was believed to have been involved in a shooting earlier that same day. The defendant, however, fled at a high rate of speed through a residential area. Middlebrooks received two criminal history points for this conviction.

At age 19, Middlebrooks was also charged and later convicted of trafficking in a controlled substance in the first degree (less than four grams of cocaine), and fleeing and evading police. Paragraph 31 of the PSR reflects that the conduct giving rise to these charges occurred on October 3, 2014. On that date, Middlebrooks was involved in a traffic stop in Lexington, Kentucky. After a drug-detection dog alerted to the presence of narcotics, the defendant fled from the scene. He was ultimately apprehended and found to be in possession of 6.9 grams of cocaine. Middlebrooks was sentenced on February 19, 2015, to a term of three years' imprisonment on the drug trafficking charge and a twelve-month sentence (to run concurrently) on the fleeing and evading conviction. He was paroled on September 30, 2015. Middlebrooks received three criminal history points for this conviction.

Middlebrooks was also convicted in 2015 for illegally possessing a controlled substance in the first degree and attempted receipt of stolen property. He received a one-year prison sentence on March 24, 2015. Additional charges of carrying a concealed deadly weapon and possession of a defaced firearm were dismissed by the Fayette Circuit Court. [*See* PSR, ¶ 30.]

Middlebrooks' first adult conviction occurred in 2013. At age 18, he was convicted of fleeing and evading police in the second degree, criminal mischief, and giving officers a false

name or address. He received a 90-day jail sentence on September 9, 2013, resulting in two criminal history points being assigned by the probation officer. [*See* PSR, ¶ 29.]

Despite Middlebrooks' convictions involving cocaine (either for possessing or trafficking the controlled substance), his PSR does not indicated that he uses the drug. Instead, paragraph 48 of the report only indicates prior use of marijuana.

> Middlebrooks states that he began using marijuana at age 17. Thereafter, he used the substance approximately twice per week until 2018. He has not had the benefit of substance abuse counseling.

[*See* PSR, ¶ 48.]

### B. Information Regarding the Present Case

As noted above, Middlebrooks was arrested on October 16, 2016, for the incident involving the shooting and death of Trinity Gay. However, he was not sentenced to prison for his involvement in the young girl's death until January 17, 2019. At the time of the incident giving rise to the current federal charges, Middlebrooks had been released by the Fayette Circuit Court.

Kentucky Probation and Parole and Lexington Police Department Gang Resource Unit officers performed a home visit on Middlebrooks' brother, Jacori Perkins, on August 22, 2018. The PSR lists 113 Harken Court, Lexington, Kentucky, as Middlebrooks' residential address. A few moments after knocking on the door of the brothers' shared residence, officers observed someone inside peeking out the blinds. Addian Stewart answered the door shortly thereafter. As officers entered the residence, they observed Middlebrooks standing in the living room. At least one officer detected the odor of marijuana.

As one officer spoke with Middlebrooks, another observed a nine-millimeter handgun in plain view, inside a shallow cardboard box on the living room couch. Middlebrooks was

detained at that time. He advised officers that David Griffin was the only other person inside the residence. But Middlebrooks was not truthful. Officers located two other individuals (including Perkins) attempting to hide upstairs. Officers also found 4.3 grams of suspected marijuana under the bed where Perkins had attempted to hide.

While detained and sitting on the living room couch, Middlebrooks obtained a shoe located near his feet and tried to place it on his foot. An officer took the shoe from Middlebrooks and found that it contained a plastic bag with 1.389 grams of cocaine base inside. A marijuana grinder and five digital scales were also found during a search of the living room. Middlebrooks admitted that the firearm was his and that he had possessed it for several months. He also admitted to possessing the crack cocaine.

## II.

The United States Probation Officer recommends a four-level increase because Middlebrooks "possessed a firearm in connection with another felony offense." United States Sentencing Guidelines section 2K2.1(b)(6)(B) provides:

> If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by **4** levels.

"Another felony offense," for purposes of subsection (b)(6)(B) means any federal, state, or local offense, other than the firearms possession offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or conviction obtained. *Id.* Application of subsection (b)(6)(B) is warranted if the presence of the firearm had the *potential* of facilitating the other felony offense. U.S.S.G. § 2K2.1, application note 14(B).

The defendant objects to the four-level increase, arguing that he did not possess the firearm in connection with another felony offense. The government must prove the factors supporting an enhancement under § 2K2.1(b)(6)(B) by a preponderance of the evidence. *United States v. Jackson*, 877 F.3d 231, 236 (6th Cir. 2017).

### III.

The PSR does not identify the underlying felony which supports application of § 2K2.1(b)(6)(B). However, the government contends that Middlebrooks possessed the firearm in connection with a drug trafficking offense. [Record No. 20] The phrase "in connection," for purposes of § 2K2.1(b)(6)(B), has the same meaning as the "in relation to" requirement of 18 U.S.C. § 924(c)(1). *United States v. Farris*, 478 F. App'x 306, 307 (6th Cir. 2012) (citing *United States v. Hardin*, 248 F.3d 489, 497 (6th Cir. 2001)). Accordingly, "in connection" means that the firearm facilitated or had the potential of facilitating the drug offense. *Id.*

The United States Court of Appeals for the Sixth Circuit has recognized various theories that may support a connection between possession of a firearm and another felony, for purposes of subsection (b)(6)(B). The "fortress theory" provides that, if it reasonably appears that firearms found in a premises owned or controlled by the defendant (and in his possession) are used to protect drugs or otherwise facilitate a drug transaction, then such firearms are possessed "in connection" with the underlying drug felony.[1] *United States v. Seymour*, 739 F.3d 923, 929-30 (6th Cir. 2014).

---

[1] Other theories are: "sweetening-the-pot," which occurs when firearms are added to a drug sale under circumstances that could cause the seller to believe that he would obtain a greater profit with a relatively low increase to the risk of detection by law enforcement; and "simple facilitation by exchange," which involves trading firearms for drugs. There is no suggestion that either of these theories apply in this case.

Application of the enhancement under the fortress theory has been approved repeatedly "where the defendant was engaged in drug trafficking or simply in a house associated with drug trafficking." *Id.* The court also has applied the fortress theory in cases where "defendants may not have been trafficking narcotics, but were protecting 'a large and valuable stash of drugs.'" *Id.* at 930 (quoting *United States v. Ennenga*, 263 F.3d 499, 504 (6th Cir. 2001)). "Even possessing a large amount of cash in close proximity to narcotics can support the firearm enhancement." *Id.*

The guidelines recognize a narrow version of the fortress theory. To wit, the four-level enhancement applies in the case of a drug trafficking offense in which a firearm is found near drugs, drug-manufacturing materials, or drug paraphernalia. U.S.S.G. § 2K2.1, application note 14(B). The fact that Middlebrooks was charged with simple possession (as opposed to trafficking) is irrelevant because the enhancement may be applied regardless of whether a criminal charge was brought or a conviction obtained. *United States v. Jones*, 735 F. App'x 1015, 1018 (11th Cir. 2018). "When the government establishes by a preponderance of the evidence that a drug trafficking offense has occurred, the enhancement applies if a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." *Id.*

The government has identified sufficient evidence to show that drug trafficking occurred at Middlebrooks' residence and that he possessed the firearm in connection to it. First, the attorney for the United States notes that Middlebrooks' firearm, a nine-millimeter handgun, is the type commonly possessed and used by drug dealers. And while 1.389 grams of cocaine base is not a particularly large quantity, it is enough, when considered with the other

circumstances, to indicate trafficking.[2] The presence of multiple digital scales hidden under the couch and inside a shoe is strongly indicative of drug trafficking, particularly when considered with the crack cocaine and loaded, chambered handgun that were kept nearby. *See United States v. Oglesby*, 210 F. App'x 503, 506 (6th Cir. 2007).

Put simply, the items located in Middlebrooks' living room are indicative of drug trafficking. Accordingly, the mere presence of the firearm in close proximity to the other items is sufficient to support application of the four-level enhancement under § 2K2.1(b)(6)(B). The government has shown, by a preponderance of the evidence, that Middlebrooks' firearm either facilitated, or had the potential to facilitate, the felony offense of drug trafficking. Accordingly, application of the four-level enhancement under § 2K2.1(b)(6)(B) is appropriate.

Based on the foregoing analysis, it is hereby

**ORDERED** that the defendant's objection to the PSR [Record No. 19] is **OVERRULED**.

Dated: July 19, 2019.

Signed By:
*Danny C. Reeves*
**United States District Judge**

---

[2] While the defendant's prior convictions are not evidence that he was trafficking in crack cocaine at the time charged in the federal indictment, they do demonstrate that individuals such as Middlebrooks often trafficking in smaller amounts of the controlled substance and that, many times, they will possess firearms to facilitate their activities.